# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## KERLIN v. KERLIN AND ALS.

### November 15th, 1888.

1 CONSIDERATION—*Failure of—Case at bar.*—A father, for a consideration payable *in futuro*, granted to a son all his estate, including bonds of another son, which were afterwards collected in good money by grantee's attorneys, who, after retaining the same for several years, paid it over in Confederate money ;

HELD :

The loss no defense to action by grantor's heirs against grantee to recover the consideration.

2. STATUTE OF LIMITATIONS—*War and slay-law periods.*—Suit instituted before January 1, 1889, for payments due in 1866 and 1867 by deed, is not barred, the period between April 17, 1861, and January 1, 1869, being excluded.

Argued at Staunton, decided at Richmond. Appeal from decree of circuit court of Shenandoah county, rendered at its September term, 1886, in the chancery cause wherein Benjamin Kerlin and others are complainants, and Thomas J. Kerlin and others are defendants. The object of this suit was to compel the said Thomas J. Kerlin to settle up the estate of his father, David Kerlin, deceased, in pursuance of several contracts between them, and of the will of the decedent. The decree being adverse to the said Thomas J. Kerlin, he obtained an appeal and *supersedeas* thereto. Opinion states the case.

*Henry C. Allen,* for appellant.

*G. W. Berlin,* for appellees.

FAUNTLEROY, J., delivered the opinion of the court.

David Kerlin, a citizen of Shenandoah county, Virginia, the owner of valuable real and personal estate, being advanced in years, determined to make disposition of all his property among his children, and to provide for the support and maintenance of himself and wife during their natural lives; and accordingly, on the 2d day of November, 1855, he contracted with his son, Thomas J. Kerlin, who was living with him, by a formal written agreement, to sell to him, the said Thomas J. Kerlin, all his property, real and personal, including his bonds and money, for the price or consideration of $8,400, to be paid as follows: $3,000 on the first day of April, 1856, and the balance in instalments of $500 each annually, with mutual covenants for title and for payment of the said sum of money. On the same day another agreement was entered into between them in writing, that David Kerlin and his wife, Barbara, should have their support out of the said property, and that Thomas J. Kerlin would take care of the said David Kerlin and Barbara, his wife, and be at all the expense of their proper maintenance during their lives. On the 9th day of November, 1855, the said David Kerlin and wife made a deed, by which they granted, with general warranty, the property embraced in the aforesaid agreements to the said Thomas J. Kerlin; and, on the 17th day of November, 1855, the said David Kerlin, to carry out the said deed and agreements, assigned to Thomas J. Kerlin in writing, among others, certain bonds which he held against his son, Benjamin Kerlin, viz: one for $1,000, dated November 28th, 1853, and then due; one for $150, dated February 4th, 1854, and due November 28th, 1855, and one for $150, dated February 4th, 1854, and due November 28th,1856. The said bonds were for purchase-money for land sold and conveyed by David Kerlin to his said son, Benjamin Kerlin, and were secured by reservation of purchase-money lien upon the face of the deed for the land. On the 4th day of December, 1855, David Kerlin made his will, by which he disposed of his

property, consisting then of the aforesaid sum of $8,400, which Thomas J. Kerlin had contracted to pay as aforesaid, among his twelve children, share and share alike. The said will was admitted to probate September 9th, 1862, a short time after David Kerlin's death, in 1862. In pursuance of the provisions of this will, Thomas J. Kerlin commenced paying out and distributing his payments for the property conveyed to him by his father, David Kerlin, as aforesaid, among his brothers and sisters as the payments became due, in April, 1856, '7, '8, '9, and 1860, '1, '2, '3, '4, '5, '6, '7, leaving an unpaid balance still due to each devisee under the will of over $100, the payment of which he resists by charging the said distributees or devisees with the loss of the $1,300 debt due by Benjamin Kerlin to the said David Kerlin, as evidenced by the bonds aforesaid of the said Benjamin Kerlin to David Kerlin, which had been regularly assigned to Thomas J. Kerlin by David Kerlin November 17th, 1855, under and in pursuance of the contracts and deed aforesaid. He, the said Thomas J. Kerlin, claiming that he received the said debt from his attorneys, Bryan & Woodson, July 21st, 1863, *in Confederate money,* who had collected it, by suit and judgment and execution against Benjamin Kerlin, in the fall of 1858 and the spring of 1859 *in good money;* and whom he suffered to retain and appropriate the good money, and more than five years after they had received it to pay the debt to him in Confederate money, which he now insists shall be scaled, and the devisees, including Benjamin Kerlin, to bear the loss. The circuit court of Shenandoah county, by its decree of September 8th, 1886, complained of, decided that "the heirs and legatees of David Kerlin are not bound to compensate Thomas J. Kerlin for the loss of any part of the money collected by Bryan & Woodson from Benjamin Kerlin for said Thomas J. Kerlin, and that the statute of limitations does not apply to this cause," etc. ; and the said decree confirmed the commissioner's report, and ordered the payment of the balances reported due and unpaid by the said Thomas J. Kerlin to the appellees.

We are at a loss to conceive how otherwise the circuit court could have decreed. Thomas J. Kerlin, the assignee and owner of these purchase-money bonds of Benjamin Kerlin for land, secured by lien upon the land, brought suit upon the bonds and obtained judgment on them at the February term, 1857, and issued execution which bound the other lands and large personal property of Benjamin Kerlin, who executed a delivery bond upon said execution, August 9th, 1858, upon which delivery bond a judgment was rendered November term, 1858, and execution issued; the sureties in the delivery bond being worth, as the record shows, over $20,000. Thomas J. Kerlin refusing to allow the execution debtor, Benjamin Kerlin, any credit for his distributive share under the will of David Kerlin, he paid every dollar of the debt and costs to Thomas J. Kerlin's attorneys, Bryan & Woodson, *in good money*, as early as the spring of 1859.

For reasons of his own, Thomas J. Kerlin suffered that money to remain in the hands of Bryan & Woodson until July 21st, 1863, for more than five years, and then took payment from them *of their* debt to *him* in Confederate money; never having taken steps by suit, or notice and motion, to force them to pay the money, although the record shows that they were worth property ample to pay the debt several times over. A. C. Bryan did not convey his property to a trustee until January 7, 1861, and John C. Woodson, the other partner, in 1863, and up to his death, in 1875, owned large property in Harrisonburg, including much personal property, and a fine law library. A suit or motion against him by Thomas J. Kerlin, and a judgment for this money, which they, as his attorneys, had collected for him, at any time between the spring of 1859, and July 27, 1870 (when the first lien upon his real estate was obtained), and even much later, would have realized the money. When warned and admonished of the danger of neglect and indulgence to these, his attorneys, he replied that he "knew his own business." When Benjamin Kerlin, the execution debtor, paid the debt to

Bryan & Woodson, in 1859, all liability for that debt upon the estate of the assignor, David Kerlin, ceased absolutely; and any subsequent loss of that debt, from any cause, must fall upon Thomas J. Kerlin, and not upon the estate, or the heirs, legatees, or distributees of the assignor, David Kerlin. In an unconditional assignment of a bond or claim, the assignor is held to be a guarantor of the legality of the bond or thing assigned, and of the solvency of the maker of the bond or claim; but he is not a guarantor of the solvency nor of the honesty of the assignee's attorney, whom he may employ to collect the debt; and it would be indeed a novel and dangerous precedent to permit an assignee to recover, against his assignor or his estate, a debt which was collected from the execution debtor by the assignee's own attorneys, or by the sheriff or constable, and subsequently appropriated or embezzled by such attorneys.

The statute of limitations, relied on by the appellant in his second assignment of error, is untenable in this case. The money is due from Thomas J. Kerlin under and by virtue of a deed of record, in which a vendor's lien is reserved, and the purchase-money is payable in yearly instalments, extending to 1867; and Thomas J. Kerlin accepted the property under that deed, according to the terms and conditions thereof. Suit was brought by the appellees against the appellant as early as December 12, 1881, for the object of the bill. It was dismissed upon demurrer a second time, September 14, 1885, and was renewed again October 9, 1885, under the provisions of chapter 146, § 21, Code 1873. But, if no suit had been thus instituted, the action would not be barred before January 1, 1889, because the payments sued for were due by the deed in 1866 and 1867.

The decree of the circuit court appealed from is just and right, and is affirmed.

DECREE AFFIRMED.